UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROSE CARTER, as
Administrator of the Estate
of Salladin Barton,

                      Plaintiff,

            -v-                               9:16-CV-422

BROOME COUNTY,
DAVID HARDER, Sheriff,
Broome County, MARK
SMOLINSKY, Administrator;
Broome County Jail,
CORRECTIONAL MEDICAL
CARE, INC., EMRE UMAR,
President, Correctional
Medical Care, Inc., MARIA
CARPIO, Chief Executive
Officer, Correctional Medical
Care, Inc., JOHN DOES 4-6,
Employees of Broome County
Sheriff's Department, MAHMOOD
BUTT, FLORANTE TINIO,
KATELYN CLAIRE, SHEENA
FENESCEY, and MORGANNE
SHUTE,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                       OF COUNSEL:

LAW OFFICES OF ELMER ROBERT     ELMER R. KEACH, III, ESQ.
   KEACH, III, P.C.                  MARIA K. DYSON, ESQ.
Attorneys for Plaintiff
One Pine West Plaza
Suite 109
Albany, NY 12205

BROOME COUNTY ATTORNEY'S               ROBERT G. BEHNKE, ESQ.
   OFFICE                              JENNIFER L. SUWAK, ESQ.
Attorneys for Defendants Broome County,
   David Harder, and Mark Smolinsky
Broome County Office Building
60 Hawley Street, P.O. Box 1766
Binghamton, NY 13902

STEINBERG, SYMER LAW FIRM              JONATHAN E. SYMER, ESQ.
Attorneys for Defendants Correctional
   Medical Care, Inc., Emre Umar,
   Maria Carpio, Mahmood Butt,
   Florante Tinio, Katelyn Claire,
   Sheena Fenescey, and
   Morganne Shute
27 Garden Street
Poughkeepsie, NY 12601

DAVID N. HURD
United States District Judge


## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On April 13, 2016, plaintiff Rose Carter ("Carter" or "plaintiff"), administrator of the

Estate of Salladin Barton ("Barton" or "decedent"), filed this 42 U.S.C. § 1983 action against

defendants Broome County (the "County"), County Sheriff David Harder ("Sheriff Harder"),

County Jail Administrator Mark Smolinsky ("Administrator Smolinsky"), Correctional Medical

Care, Inc. ("CMC"), CMC President Emre Umar ("President Umar"), CMC Chief Executive

Officer Maria Carpo ("CEO Carpo"), Registered Nurse Kaye Been ("Nurse Been"),

Registered Nurse Dawn Dames ("Nurse Dames"), Licensed Practical Nurse Karen Dickerson

("LPN Dickerson"), Registered Nurse Hope R. ("Nurse Hope"), Registered Nurse Kathy

Scope ("Nurse Scope"), Registered Nurse Judy Olsa ("Nurse Olsa"), three John Doe officers

employed by the County Sheriff's Office (the "County Does"), and three John Does employed by CMC (the "CMC Does").

Following some procedural wrangling in which certain groups of named defendants answered Carter's pleading while other filed motions to dismiss it, plaintiff sought and received a series of extensions of time before amending her complaint as of right.  *See* FED. R. CIV. P. 15(a)(1).

As relevant here, Carter's amended pleading (1) eliminated the six nurses and the three CMC Does[1] as defendants in this action; and (2) added claims against County Jail physician Mahmood Butt ("Doctor Butt"), County Jail psychiatrist Florante Tinio ("Doctor Tinio"), and three County Jail social workers:  Katelyn Claire ("LMSW Claire"), Sheena Fenescey ("LMSW Fenescey"), and Morganne Shute ("LMSW Shute").

Carter's six-count amended complaint principally alleged that defendants violated Barton's Eighth Amendment rights while he was being held at the County Jail.  According to plaintiff, Doctor Butt, Doctor Tinio, LMSW Claire, LMSW Fenescey, and LMSW Shute (collectively the "medical defendants") were deliberately indifferent to an increasingly serious medical problem that led to decedent's premature death (First Cause of Action).

Carter's amended complaint further alleged that the County Does, employed as security staff at the Jail, violated Barton's Eighth Amendment rights by repeatedly assaulting him in response to behavioral problems that manifested from the constitutionally inadequate medical care he received in the period before his death (Second Cause of Action).

---

[1]  The parties formalized the dismissal of these defendants by stipulation.  *See* Dkt. Nos. 42, 45.

Carter's pleading also asserted § 1983 claims for municipal liability against the County and CMC and § 1983 claims for supervisory liability against Sheriff Harder, Administrator Smolinsky, President Umar, and CEO Carpio. Plaintiff alleged that CMC and its leadership knowingly implemented, and that the County policymaking officials knew of and failed to correct, an ongoing policy of providing constitutionally inadequate medical care to inmates at the County Jail as a cost savings measure (Third Cause of Action).

Finally, Carter's pleading asserted state law claims against all of the named defendants for conscious pain and suffering (Fourth Cause of Action), against the County and "all Correctional Medical Care defendants" for wrongful death (Fifth Cause of Action), and against "all Broome County defendants" for assault, battery, emotional distress, and negligent supervision (Sixth Cause of Action).

On November 2, 2016, the County, Sheriff Harder, Administrator Smolinsky, and the County Does (collectively the "County defendants") answered Carter's amended complaint. Dkt. No. 41. However, CMC, President Umar, and CEO Carpio (the "CMC defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking to dismiss plaintiff's operative pleading for failure to state any viable federal claims against them.[2] Dkt. No. 39. Following several requests for extensions of time, the medical defendants[3] also moved to dismiss plaintiff's claims against them. Dkt. No. 50.

---

[2] This motion was originally noticed on behalf of the some of the nurse defendants as well, Dkt. No. 39, but all of those defendants were later dismissed by stipulation, Dkt. No. 48. The parties' stipulation appears to have resolved the cross-claims filed by those defendants, too. *See id.*

[3] The medical defendants' notice of motion did not include Doctor Tinio. *See* Dkt. No. 50. According to a suggestion of death filed by plaintiff, this defendant passed away on December 3, 2016. Dkt. No. 53.

On September 29, 2017, a Memorandum–Decision & Order (the "September 29 MDO") granted in part and denied in part the two pending motions. The September 29 MDO dismissed the individual-capacity Eighth Amendment claims against LMSW Claire, LMSW Fenescey, and LMSW Shute because Carter's amended complaint did not allege sufficient factual material to plausibly conclude that any of these three defendants engaged in any deliberately indifferent behavior that violated Barton's constitutional rights.

The September 29 MDO also dismissed any individual-capacity Eighth Amendment claims against President Umar and CEO Carpio based on direct or supervisory liability under § 1983, since plaintiff failed to allege either of these two defendants were "personally involved" in any of the incidents that gave rise to decedent's eventual death.

However, the September 29 MDO left for discovery against the CMC defendants and the medical defendants Carter's (1) deliberate medical indifference claim against Doctor Butt and Doctor Tinio (First Cause of Action); (2) municipal liability claim against CMC based on that alleged indifference (Third Cause of Action); (3) state law claim for conscious pain and suffering (Fourth Cause of Action); (4) state law claim for wrongful death (Fifth Cause of Action); and (5) state law claims for assault, battery, emotional distress, and negligent supervision (Sixth Cause of Action). Of course, none of plaintiff's various claims were dismissed against any of the County defendants, since they answered plaintiff's amended complaint rather than moving for dismissal.

Following the completion of discovery, the County defendants moved under Rule 56 for summary judgment on all of Carter's claims against them. According to the County defendants, plaintiff (1) has failed to establish Sheriff Harder's or Administrator Smolinsky's "personal involvement" in any of the alleged misconduct; (2) cannot show that Barton's

mistreatment and death occurred as a result of any policy or custom attributable to the County; and (3) did not marshal sufficient facts to demonstrate that the County Does used excessive force against decedent at any time. The County defendants further argue that plaintiff's various state law claims must be dismissed because she failed to serve a timely notice of claim.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

For at least a decade before his premature death, Barton suffered from a recurrent, severe, well-documented mental illness. Defs.' Statement of Material Facts ("Defs.' Facts"), Dkt. No. 104-11 ¶ 4. From June 10, 2013 until January 14, 2015, the County held decedent at the Jail. *Id*. ¶ 1. The parties' expert witnesses disagree on what "ultimately caused" decedent's passing, but both opine that it resulted from "a medical-related issue." *Id*. ¶ 3.

On November 15, 2014, and again on December 11, 2014, County Jail officials took Barton to Wilson Memorial Regional Medical Center, where he was diagnosed with hyponatremia; *i.e.*, low sodium blood levels, a well-known and well-documented side effect of Trileptal, a prescription medication decedent took to manage certain aspects of his ongoing mental illness. *See* Pl.'s Counter-Statement of Material Facts ("Pl.'s Facts"), Dkt. No. 114 ¶ 1; *see also* Am. Compl., Dkt. No. 33 ¶ 17.

On both occasions, the hospital advised the County Jail to restrict and monitor Barton's water intake, and that further blood work would be prudent to better evaluate decedent's medical condition. Pl.'s Facts ¶ 2. During the second hospitalization, the hospital recommended Barton undergo a thyroid ultrasound as well. *Id*.

In spite of these warnings, Doctor Butt did not restrict Barton's water intake.  Pl.'s

Facts ¶ 3.  To the contrary, medical staff and other inmates continued to observe decedent

having regular access to water, and in fact decedent "was known for drinking copious

amounts of powdered drinks."  *Id*. ¶ 4.  The Jail never conducted any blood testing on

decedent.  *Id*.  Nor did it conduct a thyroid ultrasound.  *Id*. ¶ 5.  According to a preliminary

report attached to the operative pleading, decedent eventually died from an untreated

medical condition caused by the "prolonged prescribed use of Trileptal and excessive water

intake."  Ex. B to Am. Compl.

On several occasions, the New York State Commission of Correction (the

"Commission"), the state oversight agency[4] responsible for evaluating all state correctional

facilities, county jails, local police lock-ups, and secure centers, has recommended that

various counties, include Broome County, terminate their medical services contracts with

CMC as a result of inmate deaths.  Pl.'s Facts ¶ 7.  Indeed, Sheriff Harder admitted in his

deposition to being aware of inmate deaths at other CMC-contracted jail facilities.  *Id*. ¶ 8.

Notably, the Commission recommended that the County "conduct an inquiry into the

fitness of [CMC] as a correctional medical provider."  Pl.'s Facts ¶ 9.  The Commission also

directed Sheriff Harder to ensure that CMC "made a range of policies [*sic*] changes" and to

"conduct an investigation into the conduct of its nurses."  *Id*.  But Sheriff Harder did not do

any of those things, since he approved of CMC's performance at the Jail.  *Id*. ¶ 10.

The New York State Office of the Attorney General (the "OAG") conducted its own

investigation into CMC's policies and practices.  Pl.'s Facts ¶ 11.  The OAG's independent

---

[4] Core Services, New York State Commission of Correction,
https://www.ny.gov/agencies/commission-correction.

auditor made "a range of negative findings about CMC's performance at all of CMC's facilities." *Id*. ¶ 13. The results of this investigation were released *before* Barton's death. *Id*. ¶ 11. Sheriff Harder heard about the OAG's investigation, but never inquired about any of its findings. *Id*. ¶ 12.

## III. <u>LEGAL STANDARD</u>

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). If this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. *Anderson*, 477 U.S. at 250.

Summary judgment is not appropriate if, after resolving all ambiguities and drawing all factual inferences in favor of the nonmoving party, a review of the record reveals sufficient evidence for a rational trier of fact to find in the non-movant's *favor. Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## IV. **DISCUSSION**

As an initial matter, the County defendants have not done a particularly great job of advancing their clients' interests with this motion. For instance, and as the relatively brief factual recitation set forth above probably suggests, defendants have supplied precious little material from the discovery record in support of their bid for the summary dismissal of each and every one of the claims asserted against them in this case. *See generally* Defs.' Facts.

In addition to their three-page Local Rule Statement, the County defendants submitted an attorney's affidavit that includes, *inter alia*, portions of the Jail's inmate handbook, some of Sheriff Harder's deposition testimony, some County policies on how to handle inmates expressing suicidal ideation, and copies of the expert witness reports. *See* Suwak Aff., Dkt. No. 104-1. However, the reader is left to guess at the precise relevance of much of this additional factual material, since the vast majority of it is not referenced at all in defendants' Local Rule Statement itself. *Compare* Defs.' Facts *with* Suwak Aff. & exhibits.

Notably, the County defendants go on to complain, in both their Local Rule Statement and accompanying memorandum of law, about the alleged inadequacy of certain interrogatory responses provided to them in discovery. *See, e.g.*, Defs.' Mem., Dkt. No. 104-12, 1-5[5]; Defs.' Facts ¶ 12. But this federal judicial district, just like every other, has well-worn, standard procedures for raising, resolving, and if necessary litigating discovery disputes before the assigned U.S. Magistrate Judge. *See, e.g.*, Local Rule 7.1(d).

Of course, this federal judicial district, just like every other, also adheres to the nationwide statutory provisions governing how a civil litigant may appeal an adverse

---

[5] Pagination corresponds with CM/ECF.

discovery ruling to the assigned U.S. District Judge.  *See* 28 U.S.C. § 636(b)(1)(A); Fᴇᴅ. R.

Cɪᴠ. P. 72(a).  But discovery is already closed in this case, and had been for months by the

time defendants filed this summary judgment motion in late April 2019.  *See, e.g.*, Text

Minute Entry, January 25, 2019; Text Minute Entry, December 19, 2018.  In other words, a

motion for summary judgment is not the place to raise this kind of complaint.

These shortcomings operate as an additional burden on the Court, which is tasked "at

the summary judgment motion stage of the litigation [with] carefully . . . discerning whether

there are any genuine issues of material fact to be tried[.]"  *Gallo v. Prudential Residential

Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (Cardamone, J.).

The importance of this task, and the analytical difficulty attendant with carrying it out

properly, are just two reasons why the Local Rules warn summary judgment litigants that the

"[f]ailure of the moving party to submit an accurate and *complete* Statement of Material Facts

shall result in a denial of the motion."  N.D.N.Y. L.R. 7.1(a)(3) (emphasis added).

As this language suggests, Local Rule 7.1(a)(3) "places the burden on the parties to

marshal the evidence [ ] in support of . . . the motion" for summary judgment.  *Walsh v. City

of Kingston*, 2010 WL 681315, at *2 (N.D.N.Y. Feb. 23, 2010) (McAvoy, J.).  Indeed, the

Second Circuit has routinely recognized that local rules governing summary judgment are

"essential tools" that relieve the district courts "of the onerous task of 'hunt[ing] through

voluminous records without guidance from the parties.'"  *N. Y. State Teamsters Conference

Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (quoting *Holtz

v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)).

More generally, a requirement like this accords with the principle of party presentation,

in which courts "rely on the parties to frame the issues for decision and assign to courts the

role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). As Justice Scalia once explained, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment).

After all, at this particular stage of the proceedings the initial burden is on the movant to establish why there should not be a trial on one or more of the claims, not on the non-movant to establish why there should. *See, e.g.*, *Celotex Corp.*, 477 U.S. at 323 (explaining that the movant bears the initial burden of production at summary judgment); *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (describing two ways movant can show *prima facie* entitlement to summary judgment on issues where non-movant will bear the burden of proof at trial).

Consequently, the County defendants' shortcomings on this important procedural issue, standing alone, likely provide a sufficient basis on which to deny their summary judgment motion outright. *See, e.g.*, *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (holding denial of summary judgment is warranted where, *inter alia*, "the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production"); *Walsh*, 2010 WL 681315, at *2 ("In the event that the moving party fails to comply with Local Rule 7.1(a) (3), the Court is not required to conduct its own review of the record in support of movant's factual assertions.").

To be clear, though, Carter's opposition to the motion is not without fault. Although she appropriately included a mirrored response to the County defendants' meager statement of material facts, Pl.'s Facts at 1-4, and then appropriately included a partial set of additional

facts allegedly still in dispute, *id*. at 4-6, she went far beyond the mandate of the Local Rules, dumping on the Court's docket what appears to be most of the discovery material produced this action.  *See* Dkt. Nos. 111-13; *see also* N.D.N.Y. L.R. 26.2 (explaining that parties should not file discovery with the Court in the absence of a specific reason to do so).

Of course, Carter is entitled to defend against the summary disposition of her claims by demonstrating that material facts remain in dispute.  *See* N.D.N.Y. L.R. 26.2 (permitting filing of discovery material in support of "any motion," including summary judgment).  But just like the County defendants, her three-page counter-statement of material facts is not a co-extensive presentation of the discovery material she discusses in her opposition memorandum.  *Compare* Pl.'s Facts at 4-6, *with* Pl.'s Opp'n, Dkt. No. 115 at 6-23 *and* Dkt. Nos. 111-13.

Again, this is not how the Local Rules governing summary judgment are supposed to work.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.").

Carter's opposition memorandum is full of confusion, too.  At various points, plaintiff identifies the wrong municipality as a defendant, Pl.'s Opp'n at 2, 23 (accusing "Monroe County" of the claimed misconduct), recites the wrong legal standard, *id*. at 22-23 (setting forth Rule 12(c) standard for judgment on the pleadings), and advances the wrong analysis for evaluating the case in its current procedural posture, *id.* at *passim* (repeatedly directing the Court to the sufficiency of her pleadings and allegations rather than the substance of the discovery record); *id*. at 32 (asserting the "Court should not dismiss the Plaintiff's complaint at this early stage").

More troubling still, nowhere in her opposition memorandum does Carter clearly identify whether Barton was a pre-trial detainee at the time of his death, whether this status changed at any point during his detention at the County Jail, or what legal standard is relevant to the underlying § 1983 claim for deliberate indifference to his serious medical needs. *See generally* Pl.'s Opp'n.

Although it is almost certainly the case that Barton was a pre-trial detainee[6] during the relevant time period (since he was at the County Jail), the distinction proves critical to properly evaluating Carter's federal constitutional claim(s). *See, e.g.*, *A.T. ex rel. Tillman v. Harder*, 298 F. Supp. 3d 391, 413 (N.D.N.Y. 2018) (discussing relaxation of deliberate indifference standard for § 1983 claims brought by pre-trial detainees); *Davis v. McCready*, 283 F. Supp. 3d 108, 117 (S.D.N.Y. 2017) (same).

Given its importance in the analysis, Carter really should have taken the time to spell it out. After all, her assertions of § 1983 supervisory liability against Sheriff Harder and Administrator Smolinsky and of § 1983 municipal liability against the County (and CMC, a non-movant right now) are all dependent in some way upon an underlying constitutional violation by one or more subordinate personnel at the Jail (such as Doctor Butt). *See, e.g.*, *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (explaining these § 1983 claims are ordinarily dependent on a "predicate constitutional violation"); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (explaining that *Monell* "does not provide a separate cause of action" but instead "*extends* liability to a municipal organization" if "policies or customs that it has sanctioned" lead to "an independent constitutional violation" (emphasis in original)); *Elek v.*

---

[6]  To be clear, the County defendants acknowledge as much. *See* Defs. Mem. at 17 ("At the times alleged in the Complaint the Decedent was a pretrial detainee . . . . ").

*Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisor liability.").

Even in the context of § 1983 municipal liability, the presence of an underlying constitutional violation remains a "required predicate" even if the plaintiff elects not to name the directly responsible official(s) as defendants in the suit. *See, e.g., Nardoni v. City of N.Y.*, 331 F. Supp. 3d 116, 125 (S.D.N.Y. 2018); *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.").

By way of brief review, Carter's § 1983 claim (First Cause of Action) is based on the allegedly deliberate indifference of County Jail medical staff to Barton's serious medical needs. A pre-trial detainee's claim for deliberate medical indifference is analyzed using a two-pronged standard drawn from Eighth Amendment principles and modified, as appropriate, to recognize the fact that a pre-trial detainee is entitled to slightly greater protection under the Fourteenth Amendment. *See Singletary v. Russo*, 377 F. Supp. 3d 175, 187 (E.D.N.Y. 2019); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause . . . .").

First, the alleged medical need must be objectively "sufficiently serious." *Singletary*, 377 F. Supp. 3d at 187. "In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Second, the detainee–plaintiff must show "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Under this standard, the plaintiff "must prove that an official acted intentionally or recklessly, and not merely negligently." *Id*. at 36. For instance, "[a] plaintiff can prove deliberate indifference by showing that the defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or *should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety." *Charles*, 925 F.3d at 87 (citation and internal quotation marks omitted) (emphasis in original).

"Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles*, 925 F.3d at 87.

### A. Municipal Liability

First, the County defendants argue Carter failed to identify any policy or custom of insufficient medical treatment that might have led to Barton's death. Defs.' Mem. at 6. Although the County defendants concede a general awareness of the fact that decedent's condition amount to a serious medical need, they nevertheless insist that plaintiff "has failed to produce any evidence that might establish that persons in positions of responsibility in the local government were so deliberately indifferent to prior incidents of this type of misconduct as to tacitly encourage, condone[,] or acquiesce in such behavior." *Id*. at 7.

"[U]nlike state tort law, constitutional torts cannot be premised on a theory of *respondeat superior*." *Walker v. Schult*, 365 F. Supp. 3d 266, 284 (N.D.N.Y. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Therefore, "[b]efore a municipality can be held liable under § 1983, it must be shown to have been 'the moving force of the constitutional violation.'" *Carmichael v. City of N.Y.*, 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 341-42 (2d Cir. 2011) (equating "moving force" with "proximate cause").

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'" *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 643 (S.D.N.Y. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Importantly, this element "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Roe*, 542 F.3d at 36 (citation omitted). However, a "municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash*, 654 F.3d at 334; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) ("The policy or custom need not be memorialized in a specific rule or regulation.").

"Accordingly, a plaintiff may satisfy this fifth element with evidence of: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials

responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'" *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 599-600 (N.D.N.Y. 2016) (quoting *Cowan*, 95 F. Supp. 3d at 637)).

Measured against this body of law, the County defendants' bid for dismissal of Carter's municipal liability claim must be rejected. Plaintiff claims that CMC's policymaking leadership has deliberately engaged in the practice of directing its employees to provide constitutionally inadequate medical care and services at facilities, including the County Jail, as a cost-savings measure. Pl.'s Opp'n at 26. Plaintiff further claims that this policy or practice has led to serious injuries and even the deaths of inmates in CMC's care, and that this has happened at correctional facilities throughout Upstate New York and Pennsylvania. *Id*. at 27.

Carter supports these accusations against CMC by referencing, *inter alia*, various reports by the Commission, the OAG's settlement agreement with CMC, and the independent auditor's adverse findings. Pl.'s Opp'n at 26. Those references, in turn, are supported by plaintiff's evidentiary submissions in opposition to summary judgment. *See id.* at 6-19.

Although this presentation is focused initially on CMC's alleged failures, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's

prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988).

Accordingly, the County itself "remains liable for any constitutional deprivations caused by the policies or customs of the [private medical contractor]." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985); *see also Black v. Allegheny Cty.*, 2014 WL 5493811, at *10 (W.D. Pa. Oct. 30, 2014) (denying summary judgment to municipality on *Monell* claim where issues of fact remained to be tried on private medical contractor's policy or practice).

As the Seventh Circuit has observed in evaluating a similar claim of inadequate medical care, summary judgment on a plaintiff's *Monell* claim is inappropriate if a fact-finder could find "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system" *and* that "a policy-making official knows about them and fails to correct them." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (citation and internal quotation marks omitted).

Carter's present submissions are up to this task. Plaintiff connects CMC's alleged provision of constitutionally inadequate medical care and services to the County, which contracted with CMC to provide medical services at the Jail during the time period relevant here. Viewed in the light most favorable to her, plaintiff's evidence also establishes that Sheriff Harder and/or Administrator Smolinsky, in their roles as policymakers for the Jail, possessed abundant knowledge about CMC's egregious misconduct, knew that CMC was actively engaged in this misconduct at the County Jail, and yet failed to take any corrective action to prevent the substantial risk of harm those policies and practices posed to the inmates in their custody.

Among other things, Carter's evidence shows that Sheriff Harder in particular (1) knew CMC's medical practices had caused at least one prior inmate death at the County Jail; (2) was aware that the state's investigation concluded that CMC's improper medical practices caused or contributed to that death; (3) had plenty of notice that CMC had not changed its medical policies or practices in any meaningful measure following that death; and nevertheless (4) continued to approve of the County's use of CMC without any modifications to its practices. *See* Pl.'s Opp'n at 20.

Summary judgment on a municipal liability claim is inappropriate where, as here, the non-movant's evidence would permit a jury to find that the municipal policymaker's continued inaction in the face of compelling evidence pointing to a clear, obvious, and ongoing need for intervention amounted to a ratification of the kind of unconstitutional practice that was likely to, and eventually did, lead to the death of an inmate who failed to receive treatment for his serious medical needs. *See, e.g.*, *Charles*, 925 F.3d at 86 ("In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm."). Accordingly, Carter's *Monell* claim against the County will remain for trial.

### B. Supervisory Liability

This conclusion does not resolve the question of whether or not Sheriff Harder or Administrator Smolinsky were "personally involved" in any of this alleged misconduct. As an initial matter, though, the County defendants incorrectly argue that Carter has sued these two defendants in their *official* capacities under § 1983. Defs. Mem. at 16.

It is true, as the County defendants argue, that an official-capacity damages action against a policymaker is duplicative of a § 1983 municipal liability claim against the

entity.  Even so, the Court does not read the operative pleading as pressing this kind of claim.  For that matter, neither does plaintiff.  Pl.'s Opp'n at 28 ("Nor is the Plaintiff bringing an official capacity suit against [these defendants].").

In fact, Carter acknowledges that neither Sheriff Harder nor Administrator Smolinsky were directly involved in the day-to-day supervision of Barton's medical care at the County Jail.  Even so, plaintiff alleges that these two supervisory officials can be held "accountable for their support and acquiescence of policies and practices implemented by [ ] CMC [ ] that they knew were leading to preventable deaths both in the Broome County Jail and in jails across New York State."  Pl.'s Opp'n at 28.

"Supervisory liability is a concept distinct from municipal liability, and is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates."  *Burwell v. Payton*, 131 F. Supp. 3d 268, 302 (D. Vt. 2015).  "The personal involvement of a supervisory defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring."  *Odom v.*

*Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[7]

Carter asserts that Sheriff Harder and Administrator Smolinsky are each liable as supervisors under one or more of the *Colon* factors. For instance, plaintiff argues that the evidence establishing her *Monell* claim almost certainly overlaps with the evidentiary showing required by the third *Colon* factor; *i.e.*, that the defendant–official created, or allowed to continue, the practice challenged as unconstitutional. Additionally and in the alternative, plaintiff argues the same general body of evidence would serve to demonstrate that these defendants exhibited "deliberate indifference" to Barton's constitutional rights by "failing to act on information indicating that unconstitutional acts were occurring."

Viewed in the light most favorable to her, Carter's evidence establishes that Sheriff Harder and Administrator Smolinsky were responsible for the policymaking process at issue here. Pl.'s Opp'n at 30. According to plaintiff, the Commission actually requires the Sheriff to respond to an inmate death by gathering evidence, questioning employees who might have been involved, and implementing any policy changes necessary to prevent future harm. *Id*.

Carter illustrates this point by describing how the process unfolded in the wake of the 2011 death of Alvin Rios, another inmate at the County Jail. Pl.'s Opp'n at 30. There, the Commission directed Sheriff Harder to implement certain policy changes and to conduct an inquiry into whether CMC should continue to provide medical care at the Jail. *Id*. at 31.

Carter contends that Sheriff Harder found CMC perfectly adequate as a medical care provider to the Jail despite knowing (1) of its well-documented history of providing inadequate

---

[7] The continued vitality of all five *Colon* factors remains an open question post-*Iqbal*. *See, e.g.*, *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014).

medical treatment; and (2) that it provided the particular kinds of inadequate medical treatment and services that resulted in preventable inmate deaths (*e.g.*, that of Alvin Rios and Salladin Barton).  Pl.'s Opp'n at 31.

In response, Sheriff Harder and Administrator Smolinsky assert that qualified immunity shields them from liability on the individual-capacity § 1983 supervisory liability claims.  Defs.' Mem. at 11.  According to them, the County has "extensive policies addressing treatment of special needs inmates, including inmates with suicidal ideations."  *Id*. at 11-12.

The County defendants therefore argue that Carter "has failed to demonstrate how a reasonable authority figure in [defendants'] position would have known or have reason to known [*sic*] there was a violation of Mr. Barton's constitutional rights."  *Id*. at 12.  They argue this is especially so where, as here, neither individual defendant bore any direct, personal responsibility for decedent's medical needs in the medical unit.  *See id*.

"Qualified immunity is a defense available only to individuals sued in their individual capacity."  *Askins v. Doe*, 727 F.3d 248, 254 (2d Cir. 2013).  The doctrine protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"When a defendant official seeks summary judgment on the ground that he is entitled to qualified immunity, the motion should be granted if either the evidence, viewed in the light most favorable to the plaintiff, is insufficient to establish the violation of a statutory or constitutional right, or if that right was not clearly established at the time of the alleged violation."  *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017).

In other words, "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted).

A right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").

Importantly, however, "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). Instead, it must be "particularized" to the specific facts of the case. *Anderson*, 483 U.S. at 640; *see also Hancock v. Cty. of Rensselaer*, 337 F. Supp. 3d 175, 182 (N.D.N.Y. 2018) (Mordue, J.) ("A law is clearly established in the Second Circuit if the circuit court or the Supreme Court has issued decisions that 'clearly foreshadow a particular ruling on the issue.'" (citation omitted)).

Measured against this standard, neither Sheriff Harder nor Administrator Smolinsky has carried their burden of demonstrating an entitlement to qualified immunity at this particular stage of the proceedings.

First, "deliberate indifference to an inmate's serious medical need or denial of adequate medical treatment" has not been constitutionally permissible since at least 1976, when the Supreme Court decided *Estelle v. Gamble*. 429 U.S. 97 (holding that government has an Eighth Amendment "obligation to provide medical care for those whom it is punishing

by incarceration"); s*ee also Parks v. Blanchette*, 144 F. Supp. 3d 282, 300 (D. Conn. 2015) (citing *Estelle* to conclude it is "well-established . . . that deliberate indifference to an inmate's serious medical need or denial of adequate medical treatment was not constitutionally permitted"); *Rahman v. Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014) (finding clearly established for qualified immunity purposes the "broader right to be free from deliberate indifference to serious medical needs" and applying it to pre-trial detainee).

Second, the County defendants' present evidentiary submissions are woefully insufficient, and certainly do not demonstrate that their conduct was objectively reasonable in light of this clearly established law. *See, e.g.*, *Griffin v. Amatucci*, 611 F. App'x 732, 733 (2d Cir. 2015) (summary order) ("The defendants bear the burden of showing they are entitled to qualified immunity . . . . ").

To the contrary, the County defendants' moving papers fail to give any meaningful indication about what Sheriff Harder and Administrator Smolinsky did or did not do.[8] *See* Defs.' Facts. Even looking beyond defendants' three-page Local Rule Statement to the underlying materials presented in their counsel's affidavit, a Jail handbook, a suicide prevention manual, copies of some reports from the Jail, and some snippets of a deposition do not establish the objective reasonableness of either defendant's conduct as a matter of law. *See* Suwak Aff. & exhibits.

---

[8] The County defendants belatedly attempted to rectify this error by submitting an affidavit by Administrator Smolinsky in reply. Dkt. No. 122-1. But it is too late for that right now. *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."). The County defendants should plan to present that evidence at trial.

On the other hand, Carter's evidence, viewed in the light most favorable to her, readily permits the conclusion that both Sheriff Harder and Administrator Smolinsky acted totally unreasonably in light of this clearly established law. *Parks*, 144 F. Supp. 3d at 300 (characterizing qualified immunity analysis as one that overlaps with deliberate indifference on summary judgment). Both defendants had abundant notice about the fact that CMC continued to provide seriously inadequate medical care to inmates, and both officials knew that this was an ongoing problem across CMC-contracted facilities, including the County Jail.

Further, the Commission put these defendants on notice that the CMC-contracted facility they supervised; *i.e.*, the County Jail, needed significant changes to its medical policies. Yet despite this knowledge, neither defendant took any corrective or investigative action at the County Jail. As a result of the ongoing failure by CMC to provision appropriate medical care to inmates at the County Jail, and the failure by these policymaking defendants to intervene to correct it, Barton died while in the County's custody.

Thus, Carter has established that Sheriff Harder and Administrator Smolinsky were aware of, and allowed the continuance of, CMC's unconstitutional policy and practice. Alternatively, plaintiff has established that these defendants exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring at the County Jail.

True or not, qualified immunity would not attach to *those* facts. If the proof at trial establishes something significantly less than that, qualified immunity as to one or both of these supervisory officials might be appropriate at that point. *See, e.g.*, *Ruggiero v. Prack*, 168 F. Supp. 3d 495, 525 (W.D.N.Y. 2016) ("Where there are facts in dispute that are

material to a determination of reasonableness, summary judgment on the basis of qualified immunity is not appropriate.").

## C. **Excessive Force & The County Does**

On the other hand, the County defendants correctly argue that Carter's excessive force claim against the County Does must be dismissed.  Defs.' Mem. at 17.

Carter abandoned this claim when she failed to defend it in her opposition memorandum.  *See, e.g.*, *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

Even assuming otherwise, Carter cannot proceed against these defendants because she never established the true identities of the County Does responsible for this alleged misconduct.  *See, e.g.*, *Berman v. Durkin*, 2017 WL 1215814, at *4 (N.D.N.Y. Mar. 10, 2017) (Stewart, M.J.) (Report & Recommendation) (recommending dismissal of Doe defendants after close of discovery), *adopted by* 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017) (Kahn, J.).  Accordingly, plaintiff's Second Cause of Action will be dismissed.

## D. **Notice of Claim**

The County defendants argue Carter's various state law causes of action must be dismissed because she failed to timely file a proper notice of claim.  *See* Defs.' Mem. at 22.  Plaintiff responds that she received leave to file a late notice of claim from the County Clerk.  Pl.'s Opp'n at 34-36.

The general rule in federal court is that "state notice-of-claim statutes apply to state-law claims."  *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir.

1999).  "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality."  *Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); *see also* N.Y. COUNTY LAW § 52; N.Y. GEN. MUN. LAW § 50-e(1)(a).

"The notice of claim must set forth, *inter alia*, the nature of the claim, and must be filed within ninety days of when the claim arises."  *Hardy*, 164 F.3d at 793.  "The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation."  *Fincher*, 979 F. Supp. at 1002.

When triggered, the notice-of-claim requirement also "applies with equal force to state law claims against municipal employees."  *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 355 (S.D.N.Y. 2007) (citing N.Y. GEN. MUN. LAW § 50-i(1)).  However, "[s]ervice of a notice of claim upon . . . an employee of a [municipality] is not a condition precedent to the commencement of an action against such person unless the [municipality] is required to indemnify such person."  *Grasso v. Schenectady Cty. Pub. Library*, 817 N.Y.S.2d 186 (N.Y. App. Div. 3rd Dep't 2006) (citation and emphases omitted).

In turn, a municipality's duty to indemnify its employee depends "on whether [the employee was] acting within the scope of [his or her] employment and whether the obligation to indemnify the employee was formally adopted by a local governing body."  *Rew v. Cty. of Niagara*, 901 N.Y.S.2d 442, 443 (N.Y. App. Div. 4th Dep't 2010) (internal citations and quotation marks omitted); *see also* N.Y. Pub. N.Y. PUB. OFF. LAW § 18(1)(a).

In other words, "[t]he notice prerequisite does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness."  *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d

594, 605 (E.D.N.Y. 2011) (quoting *Brenner v. Heavener*, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007)); *see also Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 72 (N.D.N.Y. 2013) (Suddaby, J.) (concluding same where complaint alleged "the defendant county employees were acting outside the scope of their employment, i.e., by the commission of intentional torts").

Carter did not file her notice of claim in the ninety-day period immediately following Barton's death on January 14, 2015. However, New York law permits a plaintiff to apply for leave to file a late notice of claim. N.Y. GEN. MUN. LAW § 50-e(5) ("Upon application, the court, in its discretion, may extend the time to serve a notice of claim . . . .").

"A motion for leave to serve a late notice of claim must be brought within the applicable Statute of Limitations which, unless tolled, is one year and 90 days from the date upon which the claim allegedly accrued." *Evans v. Brookdale Hosp. Med. Ctr.*, 599 N.Y.S.2d 84, 85 (N.Y. App. Div. 2d Dep't 1993); *see also* N.Y. GEN. MUN. LAW § 50-i(1).

Carter petitioned in state court for leave to file a late notice of claim on April 11, 2016, two days before April 13, 2016, the end of the one year and ninety day limitations period. *See* Defs.' Mem. at 22. While she waited for the state court to rule on that request, plaintiff filed this action in federal court on April 13, 2016, the last day before the running of the limitations period. Thereafter, in an Order dated June 8, 2016, Broome County Supreme Court Justice Molly Reynolds Fitzgerald granted plaintiff leave to "file a Late Notice of Claim within 30 days of the date of [the] Order." Ex. J to Suwak Aff.

The County defendants argue that Carter failed to meet the new deadline set by Justice Fitzgerald's June 8 Order; *i.e.*, the thirty days that began running from June 8. Plaintiff acknowledges she did not serve her notice of claim by June 8. However, she claims that another provision of state law gave her an extra, five-day grace period in which to timely

file it.  As plaintiff explains, a provision of New York's civil procedure law adds five days to certain time periods when service of the document setting the time period occurs by mail.

Under that provision, "where a period of time prescribed by law is measured from the service of a paper and service is by mail, five days shall be added to the prescribed period if the mailing is made within the state."  N.Y. C.P.L.R. 2103(b)(2).  At least one division of the Appellate Department has explained that "[t]he extension provided in CPLR 2103(b)(2) constitutes legislative recognition of and compensation for delays inherent in mail delivery."  *Sultana v. Nassau Hosp.*, 591 N.Y.S.2d 854 (N.Y. App. Div. 2d Dep't 1992).

Carter insists that CPLR 2103(b)(2) gave her an extra five days on top of the thirty days already given to her by the state court on June 8, which would mean that she actually had until July 13, 2016 to file her notice of claim.  And she did accomplish it in that thirty-five day time frame:  plaintiff mailed her notice of claim to the County by certified mail on July 12, 2016.  *See* N.Y. GEN. MUN. LAW § 50-e(3)(b) (explaining that service of a notice of claim by "registered or certified mail" is complete when deposited with the postal service).

On the one hand, Carter has not cited to any clear authority that shows CPLR 2103(b)(2)'s five-day grace period applies to a court order granting leave to file a late notice of claim like the one Justice Fitzgerald issued in her favor on June 8.  On the other hand, *Sultana*'s logic strongly suggest that this five-day extension applies regardless of "whether the actual number of days for [taking an action] is fixed by statute or by the court."  591 N.Y.S.2d 854.  In sum, nothing about this dispute is made any clearer by the parties' present submissions.  Rather, a review of the County defendants' *present* submissions confirms only that they have not established that dismissal is warranted on these claims at this time for this reason.  Accordingly, this argument will be rejected.

In a related vein, the County defendants suggest that Carter's negligence-based causes of action are also time-barred or fail on the merits. As to the latter argument, it is rejected on summary judgment in light of plaintiff's present evidentiary submissions.

As to the former argument, both parties appear to measure the timeliness of Carter's filings from January 14, 2015, the date of Barton's death. But the notice of claim includes alleged misconduct running the entire length of decedent's imprisonment all the way back to June 2013, and any *discrete* claims of negligence arising from earlier instances of misconduct would likely have accrued on those earlier dates. *See, e.g.*, *McCoy v. City of N.Y.*, 782 N.Y.S.2d 120, 122 (N.Y. App. Div. 2d Dep't 2004) (suggesting lower court could only grant late notice of claim as to causes of action accruing "on or after" a certain date).

Although a claim based on a discrete act or omission during this earlier time period would ordinarily be subject to the three-year limitations period for personal injury claims arising from negligence, N.Y. C.P.L.R. 214(4), it might well be time-barred in light of the fact that this three-year limitations period is shortened to one year and ninety days against a municipality and its agents, servants, and employees, N.Y. GEN. MUN. LAW § 50-i(1). In any event, the County defendants have not established that this is the case as a matter of law and therefore this argument will be rejected for now.[9]

**E. Intentional Torts**

Finally, the County defendants argue that Carter's state law claim for intentional infliction of emotional distress must be dismissed. Defs.' Mem. at 19-20. Plaintiff tries to

---

[9] Notably, however, wrongful death claims are subject to a two-year limitations period following the death, N.Y. EST. POWERS & TRUSTS LAW § 5-4.1, and this two-year period applies even when the wrongful death claim is asserted against a municipal defendant like the County, N.Y. GEN. MUN. LAW § 50-i(1).

avoid the dismissal of this claim by restating some of the "outrageous, and certainly reckless conduct" that caused Barton's death.  Pl.'s Opp'n at 33-34.

Upon review, these claims are time-barred.  Because they are intentional torts that are not subject to the notice-of-claim requirement, the applicable statute of limitations is one year.  *Quinn v. United States*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013) ("In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one year statute of limitations.").  Carter did not file her complaint in this action until April 13, 2016.  Barton died on January 14, 2015, more than one year before that date, and plaintiff's complaint does not describe any relevant conduct that occurred after his death. . Accordingly, those claims will be dismissed.[10]

## V.  CONCLUSION

Viewed in the light most favorable to her, Carter's evidence establishes that Barton's tragic death could have been avoided if the County and its policymakers had taken action to protect the inmates in their custody from an allegedly well-known danger:  CMC's profit-driven model of constitutionally inadequate medical care.

Therefore, it is

ORDERED that

1.  The County defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2.  Carter's Second Cause of Action alleging excessive force against the County Does is DISMISSED;

---

[10]  The parties do not mention Carter's assault and battery claims and the Court declines to address the issue *sua sponte*.

3. The County Does are DISMISSED as defendants in this action; and

4. Carter's state law claims for intentional infliction of emotional distress are DISMISSED against the County defendants.

The following claims remain for adjudication at trial:

(i)   § 1983 deliberate medical indifference claims against Doctor Butt and Doctor Tinio (First Cause of Action);

(ii)   § 1983 deliberate medical indifference claims under *Monell* against the County and CMC (Third Cause of Action);

(iii)   § 1983 deliberate medical indifference claims under *Colon* against Sheriff Harder and Administrator Smolinsky (Third Cause of Action);

(iv)   state law claims for conscious pain and suffering against all defendants (Fourth Cause of Action);

(v)   state law claims for wrongful death against the County and the CMC defendants (Fifth Cause of Action); and

(vi)    state law claims for assault, battery, negligent infliction of emotional distress, and negligent supervision against the County defendants.

The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.


Dated:  August 21, 2019
         Utica, New York.                          _____
                                                    United States District Judge